# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>Gloria June Kaiulani Sharsh,<br><br>    Debtor.<br>_____<br><br>Dorothy Mellen Turkoglu,<br><br>    Plaintiff,<br><br>  vs.<br><br>Gloria June Kaiulani Sharsh,<br><br>    Defendant. | Case No.07-01191<br>Chapter 7<br><br><br><br>Adv. Pro. No. 08-90026<br><br><br><br><br><br><br>Re: Docket No.1 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Trial of this adversary proceeding was held on February 2, 2009. Plaintiff Dorothy Mellen Turkoglu represented herself, and Raymond C. Cho represented defendant Gloria June Kaiulani Sharsh.

Based on the evidence presented at trial, the court makes the following:

## FINDINGS OF FACT

1.     Ms. Turkoglu owned three condominium apartments in a project called Kahe Kai. She decided to attempt to sell the apartments. Ms. Sharsh viewed the apartments at an open house and expressed an interest in purchasing

two of them.

2. Ms. Turkoglu was willing to finance the purchase price. Ms. Turkoglu asked Ms. Sharsh to provide financial information. In response, Ms. Sharsh gave Ms. Turkoglu copies of her income tax returns for 2003, 2004, and 2005. Ms. Sharsh did not provide any other financial information to Ms. Turkoglu.

3. Ms. Turkoglu reviewed the tax returns and concluded that Ms. Sharsh's income plus the expected rental income from the condominium units would be sufficient to permit her to pay interest on the purchase price of the units. Ms. Turkoglu did not request any additional financial information from Ms. Sharsh.

4. Ms. Turkoglu and Ms. Sharsh agreed that Ms. Sharsh would purchase the two units from Ms. Turkoglu for a total of $350,000 (or $175,000 per unit) pursuant to an agreement of sale. The agreement of sale provided that Ms. Sharsh would make no down payment, would make monthly payments of interest only, and would pay the entire purchase price in one year. Ms. Turkoglu and Ms. Sharsh expected that Ms. Sharsh would pay the purchase price at the end of the one year term either by reselling the units to another buyer or by obtaining a loan from a third party.

5. Ms. Turkoglu and Ms. Sharsh arranged for an escrow company to

2

U.S. Bankruptcy Court - Hawaii   #08-90026   Dkt # 53   Filed  02/06/09   Page 2 of 11

prepare the necessary documents and handle the closing. When they met at the escrow company's office to sign the agreement of sale, the escrow officer provided a preliminary title report which showed that there were two tax liens and two judgments against Ms. Sharsh. Ms. Sharsh agreed to satisfy the tax liens at closing but stated that she thought the two judgments had been discharged in Ms. Sharsh's prior bankruptcy case. Ms. Turkoglu accepted this statement without further investigation and elected to proceed with the transaction.

    6.    The transaction closed and the agreement of sale was recorded on June 26, 2006. Accordingly, the entire purchase price was due on June 26, 2007.

    7.    Ms. Sharsh satisfied the tax liens at closing as she had agreed. She eventually secured the release of one of the two judgments, but the second judgment was never released because Ms. Sharsh had reaffirmed that obligation in her prior bankruptcy. Ms. Turkoglu failed to prove, by a preponderance of the evidence, that when Ms. Sharsh said that she thought the judgments had been discharged, Ms. Sharsh knew that one of them had not in fact been discharged.

    8.    Ms. Sharsh made almost all of the monthly interest payments (except she made only half of the payment for the last month of the term), but, as the maturity date drew near, Ms. Sharsh had not sold or refinanced the units and was unable to pay the principal balance.

U.S. Bankruptcy Court - Hawaii   #08-90026   Dkt # 53   Filed 02/06/09   Page 3 of 11

9. Ms. Turkoglu claims that Ms. Sharsh made inadequate efforts to sell the units or obtain new financing. There is no evidence, however, of what Ms. Sharsh did or did not do in this regard.

10. Ms. Turkoglu offered to amend the agreement of sale to give Ms. Sharsh an additional year to pay $175,000 for one of the units, if Ms. Sharsh would relinquish the other unit. Ms. Turkoglu disclosed that Ms. Turkoglu had found a buyer for the other unit who was prepared to enter into a one year agreement of sale at $190,000 (payable at the end of the year). Ms. Turkoglu prepared an amendment document reflecting these terms, but Ms. Sharsh refused to sign it, contending that she was entitled to an unspecified share of the difference between the price she agreed to pay for the other unit ($175,000) and the price the new buyer was prepared to offer ($190,000). Ms. Turkoglu refused Ms. Sharsh's demand for compensation.

11. After Ms. Sharsh failed to pay off the agreement of sale when due, Ms. Turkoglu sued Ms. Sharsh in state court to cancel the agreement of sale and recover damages.

12. At a hearing on October 5, 2007, the state court ordered Ms. Sharsh to pay two monthly interest payments of $1,020.83 each into her attorney's trust account by October 26, 2007. (The order was not offered in evidence at trial.) Ms.

U.S. Bankruptcy Court - Hawaii   #08-90026   Dkt # 53   Filed 02/06/09   Page 4 of 11

Sharsh did not make these payments.

13. At about this time, Ms. Sharsh purchased a piece of property in Pahoa, on Hawaii Island, for $13,900. No other information about this transaction was offered in evidence at trial.

14. On November 5, 2007, because Ms. Sharsh had failed to make the interest payments, the state court canceled the agreement of sale. On November 13, 2007, the state court awarded damages in favor of Ms. Turkoglu and against Ms. Sharsh in the amount of $9,698.77.

15. On November 14, 2007, Ms. Sharsh filed a petition for relief under chapter 7.

16. Ms. Turkoglu testified that she believed that Ms. Sharsh filed her bankruptcy petition in order to take revenge on Ms. Turkoglu. Ms. Turkoglu failed to establish, by a preponderance of the evidence, that this was Ms. Sharsh's purpose.

17. Ms. Turkoglu testified that Ms. Sharsh did not adequately maintain the units and made no effort to rent them after the maturity date of the agreement of sale. Ms. Sharsh argues, but offered no evidence, that any damage to the units was attributable to normal wear and tear and that it would have been impossible to rent the units in the face of the impending cancellation of the agreement of sale.

U.S. Bankruptcy Court - Hawaii   #08-90026   Dkt # 53   Filed  02/06/09   Page 5 of 11

Ms. Turkoglu failed to prove, by a preponderance of the evidence, that Ms. Sharsh acted in this fashion for the purpose of injuring Ms. Turkoglu or her property.

Based upon these findings of fact, the court draws the following:

## CONCLUSIONS OF LAW

1.    This court has jurisdiction over this adversary proceeding, which is a core proceeding in bankruptcy. 28 U.S.C. § 157 (b)(2)(I). Venue is proper.

2.    Ms. Turkoglu asserts that the debt owed by Ms. Sharsh to Ms. Turkoglu is not dischargeable in bankruptcy based on sections 523(a)(2)(A), 523(a)(2)(B), and 523(a)(6).[1]

3.    In order to prevail under section 523(a)(2)(A), the creditor must prove that the creditor's debt is "for . . . money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." To establish "false pretenses, a false representation, or actual fraud," the creditor must establish "(1) misrepresentation, fraudulent omission or deceptive conduct by a debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the

---

[1] Ms. Turkoglu's complaint also stated a claim under section 523(a)(4). She withdrew that claim at trial.

6

U.S. Bankruptcy Court - Hawaii   #08-90026   Dkt # 53   Filed 02/06/09   Page 6 of 11

creditor proximately caused by its reliance on the debtor's statement or conduct." Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000).

    4.    Ms. Turkoglu contends that Ms. Sharsh made two kinds of misrepresentations within the meaning of section 523(a)(2)(A).

        A.    First, Ms. Turkoglu testified that Ms. Sharsh stated that she believed the two deficiency judgments were cleared in her prior bankruptcy case. This statement was not true, but Ms. Turkoglu failed to prove that Ms. Sharsh knew that her statement was false when she made it or that Ms Sharsh intended to deceive Ms. Turkoglu.

        B.    Second, Ms. Turkoglu complains that Ms. Sharsh did not "care for or inspect the apartment" and "did not rent apartment G-201 . . . allowing charges to accrue for interest, maintenance and real property taxes" (docket no. 1). This contention fails because Ms. Sharsh did not obtain money, property, or credit from Ms. Turkoglu as a result of this conduct. Further, this conduct does not amount to a statement (through word, omission, or deceptive act) that section 523(a)(2)(A) proscribes.

    5.    Therefore, Ms. Turkoglu has not carried her burden of proof under section 523(a)(2)(A).

7

U.S. Bankruptcy Court - Hawaii   #08-90026   Dkt # 53   Filed 02/06/09   Page 7 of 11

6. In order to prevail under section 523(a)(2)(B), the creditor must prove that the creditor's debt is "for . . . money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . use of a statement in writing that is materially false, respecting the debtor's or an insider's financial condition, on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied, and that the debtor caused to be made or published with intent to deceive." The elements of section 523(a)(2)(B) consist of seven factors: (1) a representation of fact by the debtor, (2) that was material, (3) that the debtor knew at the time to be false, (4) that the debtor made with the intention of deceiving the creditor, (5) upon which the creditor relied, (6) that the creditor's reliance was reasonable, and (7) that damage proximately resulted from the representation. <u>Kavoussi v. Johnson & Johnson Fin. Corp.</u> (In re Kavoussi), 60 Fed. Appx. 125, 126 (9th Cir. 2003).

7. Ms. Turkoglu argues that, when Ms. Turkoglu asked Ms. Sharsh for her financial information and Ms. Sharsh produced certain income tax returns, Ms. Sharsh implicitly represented that the tax returns contained a complete picture of Ms. Sharsh's financial condition. Ms. Turkoglu further argues that this representation was false because the tax returns did not reveal the prior bankruptcy,

U.S. Bankruptcy Court - Hawaii   #08-90026   Dkt # 53   Filed 02/06/09   Page 8 of 11

the tax liens, or the outstanding judgments.[2]  This claim fails for several reasons.

        A.      First, the implied representation upon which Ms. Turkoglu relies was not in writing.  Section 523(a)(2) applies only to <u>written</u> statements about the debtor's financial condition.

        B.      Second, Ms. Turkoglu failed to prove that she reasonably relied upon the alleged implied representation.  An individual's income tax returns on their face do not provide a complete picture of the taxpayer's financial condition.  The returns show income based on the definitions of tax law, which may not be the same as the debtor's actual income.  The returns show only those expenses that the taxpayer can deduct for purposes of computing the tax, which are almost always less than the taxpayer's actual expenses.  The returns do not usually contain information about the taxpayer's assets, liabilities, or current cash position.  Income tax returns contain some important information but they never contain all of the information needed to portray the taxpayer's complete financial position.

        C.      Third, Ms. Turkoglu testified that she learned about the tax liens and judgments before she signed the agreement of sale.  At that point, she must have realized that the tax returns did <u>not</u> accurately portray Ms. Sharsh's full

---

[2] Section 523(a)(2)(A) does not apply to this contention because the representation was (according to Ms. Turkoglu) a "statement respecting the debtor's . . . financial condition."

9

U.S. Bankruptcy Court - Hawaii   #08-90026   Dkt # 53   Filed  02/06/09   Page 9 of 11

financial condition.  Ms. Turkoglu nevertheless decided to proceed with closing. At that point, any reliance she placed on the tax returns as a full representation of Ms. Sharsh's finances was not reasonable.

   D. Fourth, Ms. Turkoglu failed to prove that Ms. Sharsh intended to deceive her when Ms. Sharsh gave her the tax returns.

 8. Therefore, Ms. Turkoglu is not entitled to relief under section523(a)(2)(B).

 9. In order to establish "willful and malicious injury" under section 523(a)(6), Ms. Turkoglu has the burden of proving both "willful" and "malicious" injury.  The malicious injury requirement is separate from the willful injury requirement.  "A 'willful' injury is a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."  Albarran v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008) (quoting Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)).  A "malicious act" is (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.  Id.  Injury caused by recklessness or negligence does not constitute "willful injury."  Geiger, 523 U.S. at 60.  The injury itself must be "deliberate or intentional."  Id.

 10. Ms. Turkoglu failed to establish that Ms. Sharsh's conduct was willful

10

or malicious within the meaning of section 523(a)(6).

11. Ms. Turkoglu claims she suffered "willful and malicious" injury when Ms. Sharsh defaulted under the agreement of sale. This is a breach of contract claim. An "intentional breach of contract cannot give rise to non-dischargeability under 11 U.S.C. §523(a)(6) unless it is accompanied by conduct that constitutes a tort under state law." <u>Lockerby v. Sierra</u>, 535 F.3d 1038, 1040 (9th Cir. 2008). Ms. Turkoglu failed to establish that Ms. Sharsh's conduct was tortious under Hawaii law.

The court will enter a separate final judgment in favor of the debtor.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: **02/06/2009**

11